IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 11, 2011 Session

## DR. WILLIAM P. HARMAN v. UNIVERSITY OF TENNESSEE

**Appeal by Permission from the Court of Appeals, Western Section**
**Chancery Court for Hamilton County**
**No. 08-0698     Howell N. Peoples, Chancellor**

**No. E2009-02139-SC-R11-CV - Filed September 16, 2011**

The issue presented in this case is whether the employee's complaint states a cause of action for relief under the Tennessee Public Protection Act. The employee, hired as a university professor and department head, filed suit against the university after he was removed as department head. On motion of the university, the trial court concluded that the complaint failed to allege that the employee was discharged or terminated or that he was discharged or terminated for refusing to participate in or for refusing to remain silent about illegal activities and dismissed the complaint pursuant to Tennessee Rule of Civil Procedure 12.03. A cause of action arises under the Act when an employer discharges or terminates the employee for refusing to participate in or for refusing to remain silent about illegal activities. We determine that because the employee was neither terminated nor discharged from his employment, only removed as department head, the complaint does not allege facts from which we can reasonably infer a claim under the Tennessee Public Protection Act. Therefore, we affirm the trial court's Tennessee Rule of Civil Procedure 12.03 dismissal of the employee's complaint.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Chancery Court Affirmed

SHARON G. LEE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined. JANICE M. HOLDER, J., filed a dissenting opinion.

Randall D. Larramore, Chattanooga, Tennessee, for the appellant, Dr. William P. Harman.

Brian A. Lapps, Jr., and Thomas C. Doolan, Knoxville, Tennessee, for the appellee, University of Tennessee.

**OPINION**

Dr. William P. Harman, a professor employed by the University of Tennessee ("the University") at Chattanooga, filed suit against the University, alleging a violation of the Tennessee Public Protection Act ("TPPA"), as well as common law and constitutional claims. The TPPA, commonly termed the "Whistleblower Statute," prohibits the discharge or termination of an employee for refusing to participate in or for refusing to remain silent about illegal activities. Tenn. Code Ann. § 50-1-304(1)(b) (Supp. 2010). The University filed a Tennessee Rule of Civil Procedure 12.03 motion for judgment on the pleadings asserting that Dr. Harman failed to state a claim for relief under the TPPA. The trial court granted the motion and dismissed the TPPA claim, ruling that, assuming the facts of the complaint to be true, Dr. Harman was neither discharged from his employment nor did he refuse to participate in or remain silent about any alleged illegal activities. Dr. Harman appealed the trial court's dismissal of his TPPA claim.[1] The Court of Appeals affirmed the judgment of the trial court. Harman v. Univ. of Tenn., No. E2009-02139-COA-R3-CV, 2010 WL 2432049, at *5 (Tenn. Ct. App. June 16, 2010). We granted Dr. Harman's Rule 11 application for permission to appeal.

At issue is the sufficiency of Dr. Harman's complaint. Tennessee Rule of Civil Procedure 8.01 requires that a pleading that sets forth a claim for relief contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for judgment for the relief the pleader seeks." While the complaint need not contain detailed allegations of all the facts giving rise to the claim, it must show that the plaintiff is entitled to relief. See Adams v. Carter Cnty. Mem'l Hosp., 548 S.W.2d 307, 308-09 (Tenn. 1977). An essential purpose of the complaint is "to give notice of the issues to be tried so that the opposing party can adequately prepare for trial." Keisling v. Keisling, 92 S.W.3d 374, 377 (Tenn. 2002).

The legal sufficiency of a complaint can be tested by a Tennessee Rule of Civil Procedure 12.03[2] motion for judgment on the pleadings or a Tennessee Rule of Civil Procedure 12.02(6)[3] motion for failure to state a claim upon which relief can be granted. The

---

[1] Dr. Harman did not appeal the trial court's decision that his common law and constitutional claims were barred under the doctrine of sovereign immunity.

[2] Tennessee Rule of Civil Procedure 12.03 provides in pertinent part that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

[3] Tennessee Rule of Civil Procedure 12.02 provides in pertinent part:

(continued...)

-2-

motions, being essentially the same, are reviewed under the same standards. See Timmins v. Lindsey, 310 S.W.3d 834, 838 (Tenn. Ct. App. 2009); Waldron v. Delffs, 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998) (citing 3 Nancy F. MacLean & Bradley A. MacLean, Tennessee Practice 190 (2d ed. 1989)).

In determining the sufficiency of a complaint, we must construe it in the plaintiff's favor, "by taking all factual allegations in the complaint as true and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts." Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 352 n.1 (Tenn. 2008) (citing Lanier v. Rains, 229 S.W.3d 656, 660 (Tenn. 2007)). "A trial court should grant a motion to dismiss 'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" Webb v. Nashville Area Habitat for Humanity, Inc., __ S.W.3d __, __, 2011 WL 2905584, at *3 (Tenn. 2011) (quoting Crews v. Buckman Labs. Int'l, Inc., 78 S.W.3d 852, 857 (Tenn. 2002)); see also Lanier, 229 S.W.3d at 660; Doe v. Sundquist, 2 S.W.3d 919, 922 (Tenn. 1999); Pemberton v. Am. Distilled Spirits Co., 664 S.W.2d 690, 691 (Tenn. 1984); Fuerst v. Methodist Hosp. S., 566 S.W.2d 847, 848 (Tenn. 1978); Ladd v. Roane Hosiery, Inc., 556 S.W.2d 758, 759-60 (Tenn. 1977). The determination of whether the facts, as set forth in the complaint, constitute a cause of action presents a question of law, Timmins, 310 S.W.3d at 838-39, and, accordingly, our review is de novo with no presumption of correctness. Graham v. Caples, 325 S.W.3d 578, 581 (Tenn. 2010); Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008).

For Dr. Harman's complaint to state a cause of action under the TPPA, it must allege facts that support the essential elements of a cause of action under the TPPA.[4] These

---

[3](...continued)
> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing: . . . (6) failure to state a claim upon which relief may be granted . . . .

[4] The TPPA, codified at Tennessee Code Annotated section 50-1-304, provides in pertinent part as follows:

> (b) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.
> . . .
> (d)(1) Any employee terminated in violation of subsection (b) shall have a cause of action against the employer for retaliatory discharge and any other

(continued...)

elements are: (1) the plaintiff's status as defendant's employee; (2) the plaintiff's refusal to participate in or remain silent about illegal activities; (3) the defendant employer's discharge or termination of the plaintiff; and (4) an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the defendant employer's discharge of the plaintiff. Sykes v. Chattanooga Hous. Auth., __ S.W.3d __, __, 2011 WL 2517145, at *6 (Tenn. 2011); see also Boyd v. Edwards & Assoc., 309 S.W.3d 470, 473 (Tenn. Ct. App. 2009) (quoting Voss v. Shelter Mut. Ins. Co., 958 S.W.2d 342, 344 (Tenn. Ct. App. 1997)). The University contends that Dr. Harman has failed to satisfy the second and third of these elements.

In reviewing the sufficiency of Dr. Harman's complaint, we take the following allegations from his complaint as true:

• In the Fall of 2000, the University hired Dr. Harman as a professor and department head of the University's Department of Philosophy and Religion within the University's College of Arts and Sciences.

• During Dr. Harman's performance as department head, he received either commendable or distinguished ratings and never received an unsatisfactory rating.

• Dr. Harman's duties as department head included the review of the academic credentials and professional performance of professors within the Department.

• Talia Welsh, hired as an assistant professor in the Department in 2001, was scheduled to be considered for tenure in the spring/summer of 2008. During 2007, as part of his administrative duties as department head, Dr. Harman concluded that Ms. Welsh's professional conduct was not acceptable. His conclusions were based in part on her repeated and unannounced absences from the classroom, her refusal to accept his advice when she engaged in an extra-marital affair with an undergraduate student in the department, her falsification of information in several year-end reports and in her resume, and her fraudulent claims for several alleged publications that did not exist.

• When the Dean of the College of Arts and Sciences, Herbert Burhenn, became aware of Dr. Harman's evaluation of Ms. Welsh, he instructed the Acting Dean to order Dr. Harman to remove all negative information from the evaluation.

---

[4](...continued)
        damages to which the employee may be entitled.

-4-

• Dr. Harman informed Dean Burhenn that he did not intend to remain silent about these matters while the University conducted a final tenure review for Ms. Welsh. Dr. Harman sent Dean Burhenn an e-mail stating "I cannot any longer obey orders to cover up professional malfeasance on the part of any member of this department, and I cannot agree to having such information suppressed." In a meeting following the email, Dean Burhenn asked Dr. Harman to resign as department head.

• When Dr. Harman refused to resign or remain silent about Ms. Welsh's "academic fraud," he was "informed that he would be terminated as Department Head at the end of the academic year. This termination was based on [his] refusal to alter official documents or remain silent as to the academic fraud and professional malfeasance which was perpetrated on the University and the citizens of the State of Tennessee."

It is not disputed that Dr. Harman was removed as department head, but continued to be employed as a professor. Whether his complaint is sufficient depends on whether the TPPA applies to an employee whose employment relationship is completely severed or only modified in some manner. By its language, the TPPA applies to an employee who is "discharged or terminated." Because these terms are unambiguous, we look to "the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning" to determine the legislature's intent. State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000); see In re Adoption of A.M.H., 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous, . . . the plain and ordinary meaning of the statute must be given effect."). We "'presume that the legislature says in a statute what it means and means in a statute what it says there.'" Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 803 (Tenn. 2000) (quoting BellSouth Telecomms., Inc. v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)).

"Termination of employment" is defined as "[t]he complete severance of an employer-employee relationship." Black's Law Dictionary 1482 (7th ed. 1999). "Discharge," in the context of an employment relationship, is defined as "[t]he firing of an employee." Id. at 475; see also Howard v. Life Care Ctrs. of Am., Inc., No. E2004-00212-COA-R3-CV, 2004 WL 1870067, at*5 (Tenn. Ct. App. Aug. 20, 2004) (stating that the statute's requirement that the employee be "terminated" "clearly require[s] an act on the part of the employer to end the employment relationship."). Thus, the plain and ordinary meaning of the words "discharged" and "terminated" is a complete severance of the employment relationship.

We note that the legislature did not include any terms indicating that other actions by the employer, such as "demotion,"[5] might also give rise to an action under the statute. The mention of one subject in a statute signifies the exclusion of other unmentioned subjects, and "[o]missions are significant when statutes are express in certain categories but not others." Carver v. Citizen Utils. Co., 954 S.W.2d 34, 35 (Tenn. 1997). The legislature could have used terms in addition to "discharged" or "terminated" had it intended to target discriminatory activity beyond discharge or termination as it has done in other instances.[6] See, eg., (Occupational Safety and Health Act of 1972) Tenn. Code Ann. § 50-3-106(7) (2008) (emphasis added) ("No employee shall be *discharged or discriminated against* because the employee has filed a complaint . . . or because of the exercise by the employee on behalf of the employee or others of any right afforded by this chapter."); (Tennessee Human Rights Act) Tenn. Code Ann. § 4-21-301 (2005) (emphasis added) ("It is a discriminatory practice for [any] person to: (1) [*r*]*etaliate or discriminate in any manner* against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter."); (Educational Professional Negotiations Act) Tenn. Code Ann. § 49-5-609(a)(6) (2009) (emphasis added) ("It is unlawful for a board of education or its designated representative to: *Discharge or discriminate against* an employee because the employee has filed an affidavit, petition or complaint or given information or testimony under this part."); Tenn. Code Ann. § 22-4-106(d)(1)-(2) (2009) (emphasis added) ("No employer shall *discharge or in any manner discriminate against* an employee for serving on jury duty . . . . Any employee who is *discharged, demoted or suspended* because the employee has taken time off to serve

---

[5] Whistleblower statutes in the following jurisdictions specifically include "demotion" among prohibited employer actions: Alabama (Ala. Code § 36-26A-3 (2001)); Colorado (Colo. Rev. Stat. Ann. § 24-50.5-102(1) (2010)); District of Columbia (D.C. Code § 1-615.52(a)(5)(A) (Supp. 2011)); Florida (Fla. Stat. § 112.3187(3)(c) (2008)); Indiana (Ind. Code § 22-5-3-3(b)(5) (2010)); Iowa (Iowa Code Ann. § 70A.28(6) (2011)); Kansas (Kan. Stat. Ann. § 75-2973(b)(2) (Supp. 2010)); Massachusetts (Mass. Gen. Laws ch. 149, § 185(a)(5) (2004)); Mississippi (Miss. Code Ann. § 25-9-173(2)(b) (2010)); Missouri (Mo. Rev. Stat. § 105.055(4) (Supp. 2011)); Nevada (Nev. Rev. Stat. § 281.611(5)(f) (2008)); New Jersey (N.J. Stat. Ann. § 34:19-2(e) (2000)); New York (N.Y. Lab. Law § 740(1)(e) (McKinney Supp. 2011)); Oklahoma (Okla. Stat. Ann. tit. 74, § 840-2.5(E)(1) (Supp. 2011)); Oregon (Or. Rev. Stat. § 659A.200(1) (2009)); South Carolina (S.C. Code Ann. § 8-27-20(A) (Supp. 2010)); Texas (Tex. Gov't Code Ann. § 554.001(3) (2004)); Vermont (Vt. Stat. Ann. tit. 3, § 972(4) (2010)); Washington (Wash. Rev. Code § 42.40.050(1)(b)(vi) (Supp. 2011)); Wisconsin (Wis. Stat. § 230.80(2)(a) (2009)).

[6] At least one commentator has observed the unusually restrictive nature of Tennessee's whistleblower statute as compared to "the broad measures" taken by other states, noting that our statute applies "only where there has been a termination." James N. Adler & Mark Daniels, Managing the Whistleblowing Employee, 8 Lab. Law. 19, 38 (1992).

on jury duty is entitled to reinstatement and reimbursement from lost wages and work benefits caused by such acts of the employer.").

We conclude that the legislature intended that there be a complete severance of employment before a claim arises under the TPPA.[7] The University continued to employ Dr. Harman as a tenured professor after removing him as department head. Because there was no termination or discharge as is required to maintain a cause of action under the TPPA, Dr. Harman's complaint is not sufficient to state a cause of action under the TPPA.[8]

Because we have determined that Dr. Harman's complaint failed to allege facts supporting the essential element of a discharge or termination, the issue of whether he refused to remain silent about illegal activities is rendered moot.

*Conclusion*

We hold that Dr. Harman did not allege sufficient facts to support his claim for relief under the TPPA. The trial court properly granted the University's Rule 12.03 motion for judgment on the pleadings, and its judgment is affirmed. Costs are assessed to Dr. William P. Harman, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE

---

[7] Our conclusion is also supported by the legislative history of the TPPA. At a March 7, 1990, committee discussion of House Bill 2516, that was later enacted as the TPPA, the bill's sponsor, Representative Roy Herron, noted his concern that "under the current law, . . . you can be forced to choose between a paycheck and a prison cell, between the safety of the public and the sustenance of your family." The statement implies that the law was intended to prevent employer actions that resulted in total severance of employment, not lesser actions, such as demotion, that would leave the employee with a job and compensation.

[8] The issue of constructive discharge is not presented in the instant case and is not addressed by this opinion.