# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
July 9, 2014 Session

## MARK COFFEY v. CITY OF OAK RIDGE, TENNESSEE

**Appeal from the Circuit Court for Anderson County**
**No. B2LA0244     Hon. Donald Ray Elledge, Judge**

---

**No. E2013-02200-COA-R3-CV-FILED-SEPTEMBER 12, 2014**

---

This is a retaliatory discharge case in which a former police officer filed suit against his department for back pay, front pay, and other compensatory damages. The trial court found that the police officer did not establish the elements of retaliatory discharge under the Tennessee Public Protection Act and dismissed his suit. The police officer appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Thomas M. Leveille, Knoxville, Tennessee, for the appellant, Mark Coffey.

Benjamin K. Lauderback and Brian R. Bibb, Knoxville, Tennessee, for the appellee, City of Oak Ridge, Tennessee.

## OPINION

## I. BACKGROUND

The plaintiff, Mark Coffey, was a Sergeant with the police department ("ORPD") serving the City of Oak Ridge ("City") until he terminated his employment on October 3, 2011. Less than two months prior to Mr. Coffey's resignation, he was tasked with conducting a live training session that called for blank ammunition to simulate the noise and realism of an actual shooter situation. Both police officers and civilians took part in the simulation. The blank ammunition was requested from ORPD's armorer, Lieutenant Brad

Jenkins ("Lt. Jenkins"). According to Lt. Jenkins, he obtained the ammunition from a box that was marked "blanks," but the rounds were actually live. Before the training session ensued, Mr. Coffey discovered that the ammunition was live and made sure that it was not used. Two days later, Mr. Coffey filed a written complaint regarding Lt. Jenkins's issuance of live ammunition for the simulation, which could have had disastrous results.

Mr. Coffey alleges that he terminated his employment with ORPD because he felt certain members were targeting him and trying to force him to resign in response to the complaint he filed against Lt. Jenkins. Specifically, he contends that he was demoted and assigned to a position working under the supervision of Lt. Jenkins, and that ORPD launched an investigation - headed by Lt. Jenkins - regarding a shotgun allegedly damaged by Mr. Coffey.

This action was filed on August 20, 2012, asserting violations of the Tennessee Public Protection Act ("TPPA"), Tennessee Code Annotated section 50-1-304, and common law retaliatory discharge. Mr. Coffey thereafter conceded that City was absolutely immune from a claim of common law retaliatory discharge. After City filed a motion for summary judgment, oral argument was held.

The proof presented in the depositions was as follows: Mr. Coffey admitted that he was currently and at the time of his complaint unaware of whether Lt. Jenkins violated any law when he mistakenly distributed the live ammunition. He had informed ORPD of the fact that, over the years, he and Lt. Jenkins had experienced a tense relationship and that having him as a supervisor would "create a hostile work environment." He acknowledged, however, that Lt. Jenkins treated him no differently than any other officer while he was working with him. Chief James Akagi ("Chief Akagi") related that he became concerned with Mr. Coffey's leadership skills upon his assumption of the position as City's police chief. He indicated that contacts outside ORPD depicted Mr. Coffey as "an ineffective leader" who "did not lead the group well, . . . didn't work well with outside entities, and wasn't targeting the right level of violator to have any positive impact in his area of responsibility." The entire drug unit formerly headed by Mr. Coffey was disbanded and reorganized. Chief Akagi further noted that Mr. Coffey, along with other officers, was put on patrol out of necessity due to understaffing at ORPD: "My intention was to get everybody that I could into patrol. . . . We were severely understaffed in patrol. Patrol's the backbone of public safety for a municipal law enforcement agency. We simply did not have the people to patrol effectively." He stated that Lt. Jenkins was assigned to supervise Mr. Coffey to help him re-acclimate to patrol, which he had not been on in a number of years, and to "coach, mentor and train him" to "be a better supervisor."

Following the argument and review of the depositions, the trial court found that there

were no genuine issues of material facts and that Mr. Coffey did not establish the elements for a claim of retaliatory discharge under TPPA. Accordingly, the trial court granted summary judgment in favor of City. Mr. Coffey thereafter filed this timely appeal.

## II. ISSUES

We consolidate and restate the issues raised on appeal by Mr. Coffey as follows:

A. Whether the trial court erred in finding that Mr. Coffey did not establish a claim for retaliatory discharge under TPPA.

> 1: Whether the trial court erred in finding that Mr. Coffey did not report an instance of illegal activity by filing his complaint against Lt. Jenkins.

> 2: Whether the trial court erred in determining that constructive discharge claims are not actionable under TPPA, and that Mr. Coffey did not establish a constructive discharge claim.

> 3. Whether the trial court erred in finding that the burden did not shift to City to provide a legitimate reason for Mr. Coffey's discharge.

B. Whether punitive damages are recoverable from a claim brought under TPPA.

## III. STANDARD OF REVIEW

This retaliatory discharge action was initiated in 2012; therefore, the dispositive motion is governed by Tennessee Code Annotated section 20-6-101, which provides,

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

>> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.

A trial court's decision to grant a motion for summary judgment presents a question of law, which we review de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 412 (Tenn. 1997). We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

This action also presents a matter of statutory interpretation, which as a question of law we review de novo without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009) (citing *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)).

## IV. DISCUSSION

Tennessee follows the "at-will" employment doctrine. At-will employment means that employment contracts of indefinite duration are terminable at the will of the employer or employee for any or no cause. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534-35 (Tenn. 2002). Nonetheless, there are important restrictions on an employer's right to terminate an employee. *Id.* at 535. Specifically, an employer's decision to terminate an employee is actionable when it contravenes a clearly established public policy. *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988).

## A.

The General Assembly adopted a statutory cause of action under the Tennessee Public Protection Act ("TPPA"), commonly referred to as the "Whistleblower Act." *See* Tenn. Code Ann. § 50-1-304(d)(1). Under TPPA, an employee cannot "be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities."

Tenn. Code Ann. § 50-1-304(b). To prevail on a whistleblower claim under TPPA, a plaintiff must establish by a preponderance of the evidence: (1) his or her status as an employee of the defendant; (2) his or her refusal to participate in, or to remain silent about, illegal activities; (3) employer's discharge of the employee; and (4) exclusive casual relationship between plaintiff's refusal to participate in or remain silent about illegal activities and employer's termination of plaintiff. *Boyd v. Edwards & Assocs., Inc.*, 309 S.W.3d 470, 473 (Tenn. Ct. App. 2009).

It is the employee's burden to establish each element of a cause of action for retaliatory discharge. *Conaster v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995) (quoting *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558-59 (Tenn. 1993)). "If, and only if, the employee presents a prima facie case of retaliation, then the burden shifts to the employer to prove a legitimate, non-pretextual reason for discharging the employee." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 389 (Tenn. Ct. App. 2006) (citing *Anderson*, 857 S.W.2d at 559); *see also Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 426-27 (Tenn. Ct. App. 1992). Tennessee Code Annotated section 50-1-304(g) specifically provides:

> (g) In any civil cause of action for retaliatory discharge brought pursuant to this section, or in any civil cause of action alleging retaliation for refusing to participate in or remain silent about illegal activities under Tennessee common law, the plaintiff shall have the burden of establishing a prima facie case of retaliatory discharge. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the plaintiff's discharge. The burden on the defendant is one of production and not persuasion. If the defendant produces such evidence, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the plaintiff's discharge and that the stated reason was a pretext for unlawful retaliation. The foregoing allocations of burdens of proof shall apply at all stages of the proceedings, including motions for summary judgment. The plaintiff at all times retains the burden of persuading the trier of fact that the plaintiff has been the victim of unlawful retaliation.

Tenn. Code Ann. § 50-1-304(g).

In this case, the trial court found that Mr. Coffey failed to prove the second, third, and fourth elements of a retaliatory discharge claim under TPPA.

**Illegal Activity**

Mr. Coffey argues that Lt. Jenkins's actions constitute an illegal activity for the purposes of a retaliatory discharge claim advanced under TPPA. Despite Mr. Coffey admitting that he did not know at the time he filed his complaint whether Lt. Jenkins violated a criminal statute by providing the live ammunition for the training exercise, a plaintiff can maintain an action as long as his "belief that a law was violated was reasonable and [he] acted in good faith in reporting it." *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997) (the protection of 50-1-304 extends to employees who have a reasonable belief that a law or regulation has been or will be violated and in good faith report it). At the time of the hearing, Mr. Coffey asserted that Lt. Jenkins's actions were consistent with reckless endangerment under Tennessee Code Annotated section 39-13-103 and therefore met the "illegal activity" requirement under TPPA.

The trial court concluded as follows:

I don't find any violation of the law. I find it was negligence on behalf of Officer Jenkins, but I don't find any illegal activity. It's negligence. . . .

The plaintiff himself admits that he's not aware of any illegal activity that he refused to remain silent about when he was employed.

* * *

There is no disputed fact that at any time did Brad Jenkins purposely, consciously disregard a known risk. It was just simply a negligent act that took place. . . . [T]here's no proof of illegal activity. There's just simply negligence.

Within the meaning of TPPA, "illegal activities" are: "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50-1-304(a)(3). Tennessee Code Annotated section 39-13-103 provides that reckless endangerment occurs when "[a] person commits an offense who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a).

Reckless behavior is when a person "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Tenn. Code Ann. § 39-11-302. Additionally, "the risk must be of such a nature and degree that its

-6-

disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." *Id.*

Even if we believe that an ordinary person in Lt. Jenkins's position would have double-checked the box to make sure the ammunition was not live, and that by not checking the ammunition before delivering it, Lt. Jenkins disregarded a substantial and unjustifiable risk that he was providing live ammunition for a simulation, the actions do not meet the requirement of placing a person in "imminent danger." "Imminent" is not defined in the Tennessee Code Annotated. However, Black's Law Dictionary defines imminent as "[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous. Something which is threatening to happen at once, something close at hand, something to happen upon the instant, close although not yet touching, and on the point of happening." *State v. Payne*, 7 S.W.3d 25, 27-28 (Tenn. 1999) (quoting Black's Law Dictionary 750 (6th ed. 1990). "[I]n order for the threat of death or serious bodily injury to be 'imminent,' the person must *be placed in a reasonable probability of danger as opposed to a mere possibility of danger." State v. Hatmaker*, E2011-01553-CCA-R3-CD, 2012 WL 3064614, at *7 (Tenn. Crim. App. July 30, 2012), appeal denied (Jan. 8, 2013) (quoting *Payne*, 7 S.W.3d at 28) (internal quotation marks omitted). Thus, while the consequences could have been severe, Lt. Jenkins's actions do not satisfy the elements of "reckless endangerment" because he did not cause an imminent threat of any danger to the participants by placing them in a reasonable probability of danger. Accordingly, Mr. Coffey's complaint against Lt. Jenkins did not regard an illegal activity as required by TPPA.

**Fear of Dismissal**

In addition to the illegal activity requirement, an employee must "face the choice between reporting illegalities and keeping [his] job[.] . . . [T]here must be a fear of dismissal contemporaneous with the plaintiff's decision whether to report the illegal activities." *Guy v. Mut. of Omaha Ins. Co.*, No. W1999-00942-COA-R9-CV, 2001 WL 204485, at *8 (Tenn. Ct. App. Mar. 1, 2001) (quoting *Griggs v. Coca-Cola Employees' Credit Union*, 909 F. Supp. 1059, 1064 (E.D. Tenn. 1995)). In *Guy*, this court held that an employee did not "face the choice between reporting illegalities and keeping his job" when he did not know the report could have adverse consequences at the time it was filed. *Id.* at *11 (internal quotation marks omitted). At the time Mr. Coffey filed his complaint regarding the live ammunition, he was not in fear of dismissal. He stated specifically in his deposition as follows: "I didn't really have any fears at that point of being demoted. I had done nothing to be terminated for or even lose my rank." He only began to fear a dismissal or that his job might be in danger after

he filed the complaint. Mr. Coffey therefore cannot establish that he faced the requisite contemporaneous fear of dismissal under TPPA.

## Constructive Discharge

Mr. Coffey claims that he was compelled to resign, which amounts to a termination of employment under TPPA. In order to establish a constructive discharge claim, the Tennessee Supreme Court has noted that there must be "a showing that a reasonable employer would have foreseen the employee's resignation, given the intolerable conditions of employment." *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 34 (Tenn. 1996) (citing *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1249 (6th Cir. 1989)). The Tennessee Supreme Court has also noted that "other actions by the employer, such as 'demotion' do not give rise to an action of retaliatory discharge." *Harman v. University of Tenn.*, 353 S.W.3d 734, 739 (Tenn. 2011). This court has held that "termination" under TPPA "clearly require[s] an act on the part of the employer to end the employment relationship." *Howard v. Life Care Ctrs. of Am., Inc.*, E2004-00212-COA-R3-CV, 2004 WL 1870067, at * 5 (Tenn. Ct. App. Aug. 20, 2004).

Mr. Coffey argues that he has made the requisite prima facie showing of intolerable working conditions by establishing that he (1) made a complaint against a superior officer, (2) was investigated for damaging a firearm by the superior officer he filed the complaint against, (3) was assigned to work under the superior officer he filed the complaint against after being demoted from his post, and that (4) a Captain Mark Stone ("Captain Stone") of ORPD testified during a deposition that he believed Mr. Coffey was being targeted. It is not disputed that Mr. Coffey filed a complaint against Lt. Jenkins, and though there was a pending investigation lead by Lt. Jenkins regarding the damage Mr. Coffey allegedly caused to a firearm, the shotgun incident occurred on August 5, 2011, and the investigation had begun before Mr. Coffey filed his complaint against Lt. Jenkins.[1] As previously noted, demotions do not qualify as intolerable working conditions under a claim of constructive discharge. *See Harman*, 353 S.W.3d at 739. Additionally, Chief Akagi explained that Mr. Coffey, along with other officers, was put on patrol due to understaffing, and that Mr. Coffey was assigned to Lt. Jenkins specifically so that Lt. Jenkins could help Mr. Coffey re-acclimate to patrol, which he had not been on in a number of years. Moreover, the undisputed testimony in the record revealed that Chief Akagi was unaware of the incident about which Mr. Coffey complains until well after it occurred and was not aware of the history between Mr. Coffey and Lt. Jenkins. Finally, Mr. Coffey himself admitted that Lt.

---

[1] Mr. Coffey stated in his deposition that he "felt harassed" *prior* to filing the complaint regarding the live ammunition.

Jenkins treated him no differently than any other officer on his shift. Captain Stone testified that Mr. Coffey and Lt. Jenkins worked well together professionally, and that Lt. Jenkins was never rude or unpleasant to Mr. Coffey. The trial court stated on this issue

> case law says that under constructive discharge, the proof of work conditions must be so intolerable that a reasonable person subject to them would resign. . . .

> Mr. Coffey himself admitted that [Lt.] Jenkins treated him no differently than any other officer on his shift. Captain Stone, who was Coffey's supervisor and friend testified that the two men worked together well professionally and Jenkins was never rude or unpleasant to Coffey. . . . [W]hen the plaintiff's memorandum of September 15, 2011 to [Captain] Stone [was] written in regard to Jenkins' supervision, plaintiff[] didn't even mention the ammo incident. This is now what he claims as the prime reason that his environment was intolerable. The plaintiff himself admits that he is unaware of any illegal activity and quite candidly counsel, although things could have been tragic, . . . I don't find any violation of the law.

Even if a constructive discharge theory could be established on this record, the conditions are far from "intolerable." As such, we agree with the findings of the trial court that Mr. Coffey does not establish a prima facie showing of constructive discharge.

### Termination solely for refusal to remain silent

The final element of a TPPA claim is that an employee must demonstrate that his or her refusal to participate in or remain silent about illegal activities was the sole reason for his or her discharge. *Guy*, 79 S.W.3d at 534-35. The issue regarding the illegal activities must be the "sole reason," meaning that the employer considered no other factors as grounds for cessation of employment. *Voss v. Shelter Mut. Ins. Co.*, 958 S.W.2d 342, 344 (Tenn. Ct. App. 1997). Where an employer provides substantial evidence that the dismissal was caused by other conduct of the plaintiff not protected, sole causation cannot be established. *Hill v. Perrigo of Tenn.*, M2000-02452-COA-R3-CV, 2001 WL 694479, at *6 (Tenn. Ct. App. June 21, 2001).

In this suit brought pursuant to TPPA, Mr. Coffey was required to establish a causal relationship between his complaint about the live ammunition and his alleged constructive termination by ORPD. He had to show that ORPD's motivation for desiring the discharge was based solely on the complaint he filed regarding Lt. Jenkins. The answer to this issue

is found in Mr. Coffey's deposition response:

> Q. ... Do you think you would have been targeted eventually anyway, ***whether or not the live blank ammo issue had occurred at all?***
>
> A. Your [sic] asking for my opinion?
>
> Q. Yes.
>
> A. ***I believe they would have found something else, yes.***
>
> Q. ***At some point in time, you felt like they wanted you out of there; is that fair?***
>
> A. ***I feel like Brad and Mike would have continued to do what they had done in the past and would have continued to, like I said before, amplify mistakes, downplay successes.*** And I guess that could have been up to the chief what he wanted to do at that point. I had seen it happen to me. I had seen it happen to other people, like I said. So yes, there was a concern of that anyway.

(Emphasis added.).

Even if Mr. Coffey could establish a prima facie showing of sole causation, City has demonstrated legitimate, nondiscriminatory reasons for the actions about which plaintiff complains. "The subjective interpretation by the employee of the actions of the employer will not create an issue of fact to defeat summary judgment." *Hill*, 2001 WL 694479, at *7. On this record, Mr. Coffey cannot establish sole causation and pretext. The trial court properly found that Mr. Coffey did not establish a prima facie case of retaliation and that the burden did not shift to the employer to provide a legitimate, nondiscriminatory, and non-pretextual reason for the constructive discharge. The action of the trial court in sustaining the motion for summary judgment is affirmed.

## B.

Mr. Coffey argues that the issue of punitive damages when a suit is brought under TPPA has not been addressed by the courts, and is an issue of first impression. Because we have affirmed the trial court's summary judgment ruling this issue is pretermitted.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Mark Coffey.

_____
JOHN W. McCLARTY, JUDGE