# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 9, 2019 Session

## ADAM BOSWELL v. YOUNG MEN'S CHRISTIAN ASSOCIATION OF MIDDLE TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. 2016-338      Joseph A. Woodruff, Judge**

_____

### No. M2018-00180-COA-R3-CV

_____

The plaintiff, a health club member, seeks damages from the health club based on its alleged failure to protect him from sexual assaults in the locker room by another club member. The complaint alleges that the health club "knew who the assailant was, and was aware that [the assailant] had engaged in such actions many times prior to" assaulting the plaintiff. The health club denied liability insisting it had no prior knowledge of sexual assaults by the assailant or anyone else. It also contended the claims were barred by the exculpatory provision in its membership agreement, which released the club from liability for injuries "resulting from" the plaintiff's "use of [the] facilities." The trial court found the exculpatory provision was unambiguous and summarily dismissed the claims. Thereafter, and while this matter was on appeal, the Tennessee Supreme Court revised the standards by which the enforceability of an exculpatory agreement should be determined. *See Copeland v. Healthsouth/Methodist Rehabilitation Hospital, LP*, 565 S.W.3d 260 (Tenn. 2018). We have determined that the plaintiff failed to present competent evidence that the health club knew or should have known of prior assaults by the assailant or anyone else. Because there is no genuine dispute of fact, the health club is entitled to judgment as a matter of law, and the issue regarding the enforceability of the exculpatory clause is moot. Accordingly, we affirm the grant of summary judgment, albeit on other grounds than found by the trial court, and remand with instructions to dismiss the complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Dan Channing Stanley and Richard Everett Collins, II, Knoxville, Tennessee, for the appellant, Adam Boswell.

Brian Walthart and Richard Charles Mangelsdorf, Jr., Nashville, Tennessee, for the appellee, Young Men's Christian Association of Middle Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The matters at issue pertain to three alleged sexual assaults of a member of the Young Men's Christian Association of Middle Tennessee ("the YMCA") by another member. Specifically, Adam Boswell ("Plaintiff") alleges that Jack Dabney sexually assaulted him by groping his genitals on three occasions in the men's locker room of the YMCA's Maryland Farms facility in 2015 and 2016.[1]

The first incident occurred on July 10, 2015. After working out, Plaintiff changed into his swimming suit and entered the hot tub. Shortly thereafter, a man who was unknown to Plaintiff entered the hot tub, sat next to Plaintiff and reached into Plaintiff's swimming suit. Plaintiff leaped from the tub and left the facility without reporting the incident to anyone.

The second incident occurred one week later, on July 17, 2015. While Plaintiff was using the steam room, the same man who assaulted Plaintiff on July 10 entered the steam room, approached Plaintiff and put his hand on Plaintiff's genitals. Plaintiff jumped up and left the steam room but, this time, Plaintiff reported the incident to the YMCA's membership greeter, Erin Hill. Although Plaintiff still did not know the identity of the man who groped him, he described the man to Ms. Hill; however, Plaintiff declined to review video footage in order to identify the man or otherwise assist in an investigation.[2] According to Plaintiff's deposition, Ms. Hill requested that Plaintiff "go through the videotape" to identify the individual who groped him, but Plaintiff refused. The relevant colloquy on this point reads:

> Q:    Well, [Ms. Hill] told you she was willing for you to come back and she would convene a session for you to look at video footage. Is that something you considered doing?

---

[1] Mr. Dabney, who was a defendant in this action, denied assaulting Plaintiff. Thereafter, Plaintiff dismissed his claims against Mr. Dabney, and he is not a party to this appeal. Whether Mr. Dabney paid any damages to Plaintiff to settle the claims against him does not appear in this record.

[2] In his deposition, Plaintiff stated that he was on federal probation at the time and did not want to have to inform his probation officer about the incidents.

A:  Yes, I did consider it.

Q:  Did you do it?

A:  No, sir.

Q:  Why not?

A:  I did not want to be involved in this. I did not want a federal investigation. I did not want to have to talk to [my parole officer] about what went on. I had a fear [of] being transported to the holding facility in Kentucky when the federal government pursued an investigation. I didn't want to be a part of any of this.

Instead of identifying his assailant, Plaintiff filled out a comment card, requesting the YMCA "put somebody inside the shower area to protect people from being sexually assaulted."

The third incident occurred seven months later, on February 12, 2016, while Plaintiff was again using the steam room. The same individual approached Plaintiff and groped Plaintiff's leg. Plaintiff left the steam room and went to the Maryland Farms YMCA Executive Director, Jodi Schroer. Plaintiff told Ms. Schroer about the incidents. Although Plaintiff had not assisted the YMCA in identifying his assailant after the second incident, he complained that no action had been taken. When Plaintiff agreed to help with the investigation and assist in identifying his assailant, Ms. Schroer asked a male staff member to go into the men's locker room with Plaintiff. Plaintiff pointed to the assailant, and the staff member identified him as Jack Dabney. When they informed Ms. Schroer of the assailant's identity, Ms. Schroer informed Plaintiff that she would investigate the matter, and Plaintiff left the building. Mr. Dabney continued to have access to the YMCA's facilities during the investigation.

Ms. Schroer immediately notified her supervisor of Plaintiff's report and the supervisor advised Ms. Schroer to obtain the exact dates and times of the alleged incidents. Ms. Schroer then called Plaintiff to obtain more information. When he did not answer, she left a message asking him to return her call. She also sent him an email. Plaintiff, however, never responded to either.

Not having heard from Plaintiff, Ms. Schroer again called Plaintiff on February 18, 2016, in an attempt to obtain more information to aid in her investigation. The following day, February 19, Plaintiff returned to the Maryland Farms facility. When Plaintiff saw Mr. Dabney, he went to Ms. Schroer and again complained that nothing had been done, at which time Ms. Schroer informed Plaintiff "the YMCA was still processing [his] reports of sexual assault."

As Ms. Schroer explained in her deposition, the investigation included a review of the YMCA's "scan reports" that showed when members enter the facility. The scan reports showed that Mr. Dabney had used his membership card to enter the facility on two of the dates at issue but not on July 10, 2015, the date of the first assault. Nevertheless, another membership card on Jack Dabney's account was scanned on that date.[3]

Ms. Schroer testified that the YMCA ultimately terminated Mr. Dabney's membership. As she explained, although it was possible that Plaintiff's version of events might have been inaccurate in some respects, the YMCA "erred on the side of caution" and determined that limiting or terminating Mr. Dabney's access "was the better course of action."

Five months later, on July 10, 2016, Plaintiff filed a complaint asserting claims against Jack Dabney for assault and battery, and claims against the YMCA for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and vicarious liability for the assault.[4] The Complaint alleged, *inter alia*, that the YMCA knew or should have known that Mr. Dabney engaged in the described behavior on earlier occasions but did not enact necessary security procedures to protect its members.[5] Both defendants filed answers denying liability. In pertinent part, the YMCA denied having any knowledge of prior assaults by anyone at the facility and asserted numerous affirmative defenses.

The YMCA filed a Motion for Partial Summary Judgment on Plaintiffs' claims for negligence and negligent infliction of emotional distress. The YMCA asserted that Plaintiff waived his right to sue the YMCA for injuries resulting from his use of the YMCA's facilities by signing a Membership Application that included an exculpatory clause that provided:

> In consideration for gaining membership and/or being allowed to participate in the activities and programs of the YMCA of Middle Tennessee ("YMCA") and to use its facilities (whether owned or leased),

---

[3] Ms. Schroer surmised that Mr. Dabney might have accessed the facility that day by using a family member's card by mistake.

[4] The Complaint alleged that Mr. Dabney served on the YMCA's board of directors, which was later proven to be untrue.

[5] The Complaint did not state a claim against the YMCA for gross negligence.

equipment and machinery, I do hereby waive, release and forever discharge the YMCA and its officers, agents, employees, volunteers, representatives, directors and all other from any and all responsibility or liability for injuries or damages resulting from my participation in such activities or programs or my use of such facilities, equipment or machinery, even if such damage or injury results from a negligent act or omission.

On February 13, 2013, the trial court entered a scheduling order that required the parties to complete discovery related to the Motion for Partial Summary Judgment by April 28, 2017.

On June 1, 2017, Plaintiff filed a response in opposition to the YMCA's motion. Plaintiff admitted signing the Membership Application but contended the exculpatory provision did not apply because his injuries did not "result from" his use of the YMCA's facilities. In addition, Plaintiff argued that public policy prevented the YMCA from relying on the exculpatory provision because the Complaint alleged gross negligence. Plaintiff included an affidavit in which he alleged, *inter alia*, that Ms. Hill told him the YMCA knew about inappropriate, sexual conduct in the men's locker room:

> I described both incidents to Ms. Hill in full detail. During my discussion with Ms. Hill, she informed me that inappropriate sexual conduct in the men's locker room was a recurring problem that the YMCA was fully aware of. She also told me that Dabney had engaged in similar conduct many times before.

The YMCA filed a Reply, disputing whether Plaintiff raised a claim for gross negligence and contending that Ms. Hill's statement was inadmissible hearsay.

On July 12, 2017, the trial court granted the YMCA's Motion for Partial Summary Judgment based on the language of the exculpatory provision. The court found the language was unambiguous and that Plaintiff's injuries resulted from Plaintiff's "use of" the facilities. As a result, the court dismissed Plaintiff's claims for negligence and negligent infliction of emotional distress.

On September 26, 2017, Plaintiff voluntarily dismissed his claims against Mr. Dabney with prejudice.

On October 10, 2017, the YMCA filed a Motion for Summary Judgment seeking dismissal of Plaintiff's remaining claims of assault and battery and intentional infliction of emotional distress. Plaintiff did not respond to the motion. The trial court entered an order on January 3, 2018, dismissing Plaintiff's remaining claims against the YMCA. This appeal followed.

- 5 -

Plaintiff appeals the trial court's July 12, 2017 order that dismissed Plaintiff's claims for negligence and negligent infliction of emotional distress. Plaintiff also contends the trial court erred by not recognizing that the record demonstrates a claim of gross negligence on the part of the YMCA, which the exculpatory clause cannot bar. Plaintiff does not appeal the dismissal of his claims for assault and battery, and intentional infliction of emotional distress.

The issues before this court, as we have restated them, are as follows:

(1) Whether the record demonstrates gross negligence on the part of the YMCA, such that the exculpatory clause, no matter how broadly construed, cannot operate to excuse the YMCA from liability;

(2) Whether Plaintiff presented competent evidence sufficient to create a question of fact on his claim that the YMCA is liable for its negligence in failing to protect Plaintiff from "a sexual assault perpetrated by another member of the YMCA known to have engaged in similar conduct in the past;" and, if so,

(3) Whether the exculpatory clause precludes Plaintiff from "suing the YMCA for its negligence in failing to protect [Plaintiff] from a sexual assault perpetrated by another member of the YMCA known to have engaged in similar conduct in the past."

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264.

When a motion for summary judgment is made and supported as provided in Tennessee Rule of Civil Procedure 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the nonmoving party must respond with specific facts "showing that there is a genuine issue for trial." *Id.* (quoting Tenn. R. Civ. P. 56.03). A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

## ANALYSIS

### I. GROSS NEGLIGENCE

Plaintiff contends the record demonstrates a claim that the YMCA was grossly negligent in failing to take timely and appropriate measures to prevent the sexual assaults by Mr. Dabney because it shows that the YMCA knew or should have known of Mr. Dabney's conduct prior to his assaults on Plaintiff. He also contends the exculpatory clause, no matter how broadly construed, cannot operate to bar such a claim. The YMCA insists Plaintiff did not state a claim for gross negligence in the Complaint and the record does not demonstrate such a claim. We agree with the YMCA.

Tennessee Rule of Civil Procedure 8.01 requires that a pleading that sets forth a claim for relief "contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." "An essential purpose of the complaint is 'to give notice of the issues to be tried so that the opposing party can adequately prepare for trial.'" *Harman v. Univ. of Tennessee*, 353 S.W.3d 734, 736 (Tenn. 2011) (quoting *Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002). Simply put, the Complaint does not state a claim for gross negligence. Moreover, Plaintiff implicitly acknowledges this deficiency by framing the issue on appeal as "whether the record in this case demonstrates gross negligence." Thus, Plaintiff waived this claim unless "the record demonstrates a claim for gross negligence."

Plaintiff's brief discusses this issue in less than two pages and nowhere in the brief does Plaintiff cite to evidence which "demonstrates" a claim for gross negligence.[6] This deficiency is fatal to Plaintiff's claim because Rule 6(a) of the Rules of the Court of Appeals of Tennessee states that the argument for each issue shall contain:

---

[6] Furthermore, Plaintiff does not cite to any allegation, sentence or paragraph in the Complaint.

(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue . . . , with citation to the record where the erroneous or corrective action is recorded.

(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) *A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found*.

Tenn. Ct. App. R. 6(a) (emphasis added). Subsection (b) of Rule 6 goes on to state in pertinent part: "No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded." Additionally, Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure requires an appellant's brief to contain an argument that sets forth, *inter alia*, "the contentions of the appellant with respect to the issues presented, . . . with . . . appropriate references to the record (which may be quoted verbatim) relied on." Tenn. R. App. P. 27(a)(7)(A). Plaintiff's brief fails to comply with either rule.

As has been noted in numerous decisions, "[t]his court is under no duty to verify unsupported allegations in a party's brief." *Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2000) (citing *Duchow v. Whalen*, 872 S.W.2d 692, 693 (Tenn. Ct. App. 1993)). Furthermore, our courts have routinely held that the failure to make appropriate references to the record as required by Rule 27(a)(7) constitutes a waiver of the issue. *Id.* at 55. Plaintiff's brief does not provide citations to facts that support his contention that the YMCA was grossly negligent; therefore, he has waived the issue. Accordingly, we hold that Plaintiff failed to demonstrate a claim for gross negligence and that failure leaves only Plaintiff's claims of ordinary negligence.

II.   ORDINARY NEGLIGENCE

Plaintiff contends the trial court erred by dismissing his ordinary negligence claims based on the exculpatory clause in the membership agreement. The YMCA counters by insisting the trial court's decision was correct, even under the new standard established in *Copeland v. Healthsouth/Methodist Rehabilitation Hospital, LP*, 565 S.W.3d 260 (Tenn. 2018). The YMCA also contends "[t]here are no facts from which it would be reasonable to conclude that it [was] reasonably foreseeable that a crime would be committed on the YMCA's premises," and "[t]here are no facts in the record

- 8 -

from which the trial court, or this Court, could conclude that the YMCA was . . . negligent at all." We will address the YMCA's challenge to the sufficiency of the evidence first.

It is important to note that Plaintiff is seeking to hold the YMCA liable for the criminal acts of Mr. Dabney. Thus, we must be mindful of the duty a business owes to protect its customers—in this case, a member of the YMCA—from the criminal acts of third parties:

> A business ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises. The business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers. However, a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.

*McClung v. Delta Square Ltd.*, 937 S.W.2d 891, 902 (Tenn. 1996).

The YMCA filed a properly-supported motion for summary judgment, thereby shifting the burden of persuasion to Plaintiff. *See Rye*, 477 S.W.3d at 265. Based on the legal principle in *McClung*, for Plaintiff's negligence claims to survive summary judgment, Plaintiff had the burden to present or identify competent evidence sufficient to create a genuine dispute of fact that the YMCA knew or should have known prior to the assaults on Plaintiff that criminal acts by Mr. Dabney on its premises were reasonably foreseeable. Stated another way, Plaintiff was required to respond with facts "showing that there is a genuine issue for trial." *Id.* at 264 (quoting Tenn. R. Civ. P. 56.03). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Byrd*, 847 S.W.2d at 215.

"As a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of defendant's premises." *McClung*, 937 S.W.2d at 902. The record includes facts that could establish that the YMCA was aware that inappropriate but consensual liaisons previously occurred at its facilities. However, there is no competent evidence that the YMCA was aware of *sexual assaults* by Mr. Dabney or others at the facility. Simply put, there is no evidence of any criminal acts or assaults against YMCA members or invitees in its facility. Moreover, there is no competent evidence from which a reasonable person or jury could conclude that an assault such as that by Mr. Dabney was foreseeable.

- 9 -

Plaintiff submitted an affidavit in which he states that Ms. Hill told him on the date of the second incident that Mr. Dabney "had engaged in similar conduct many times before." However, Ms. Hill's purported statement, even if admissible, fails to support a finding that the YMCA or Ms. Hill knew or should have known that Mr. Dabney had criminally assaulted anyone at a YMCA facility. When read closely, it is readily apparent that her statement merely indicates that the YMCA had prior knowledge that "*inappropriate sexual conduct* in the men's locker room was a recurring problem that the YMCA was fully aware of" and "that [*Mr.*] *Dabney had engaged in similar conduct* many times before." Thus, if admissible, Ms. Hill's statement would have shown that Mr. Dabney had engaged in inappropriate sexual conduct in the men's locker room, which is not probative of whether the YMCA knew Mr. Dabney had "sexually assaulted" or engaged in "criminal conduct" at a YMCA facility.

Significantly, however, what Ms. Hill purportedly said to Plaintiff is inadmissible hearsay. A hearsay statement "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Such a statement is not admissible unless it is shown to be admissible as provided by the rules of evidence or otherwise by law. Tenn. R. Evid. 802. "If a statement is hearsay, but does not fit one of the exceptions, it is inadmissible, and the court must exclude the statement." *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). Plaintiff offered his recitation of the statement purportedly made by Ms. Hill to prove the YMCA had prior knowledge of Mr. Dabney's criminal conduct. Because it was offered for the truth of the matter asserted, Ms. Hill's purported statement was hearsay. Moreover, Plaintiff failed to establish that her hearsay statement "fit one of the exceptions" to the hearsay rule. Accordingly, her statement would be inadmissible at trial.

The same rule applies to affidavits submitted at the summary judgment stage. Tennessee Rule of Civil Procedure 56.06 provides, in relevant part, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The hearsay attributed to Ms. Hill fails to meet this test. Because Ms. Hill's purported statement is inadmissible hearsay, it cannot be considered at the summary judgment stage. *See Perlberg v. Brencor Asset Mgmt., Inc.*, 63 S.W.3d 390, 396–97 (Tenn. Ct. App. 2001); *see also Byrd*, 847 S.W.2d at 215 ("To permit an opposition to be based on evidence that would not be admissible at trial would undermine the goal of the summary judgment process to prevent unnecessary trials since inadmissible evidence could not be used to support a jury verdict.").

The only other facts on which Plaintiff relies to establish that the YMCA knew or should have known of Mr. Dabney's criminal conduct are set forth in one newspaper article and Craigslist advertisements. The article and ads indicate that persons were

coordinating dates and times to meet at a YMCA facility to engage in *consensual*, albeit inappropriate, sexual acts in a health club locker room. However, a newspaper article and a "web posting" such as a Craigslist advertisement are inadmissible hearsay. *See State v. Martin*, No. 02C01-9512-CC-00389, 1997 WL 471158, at *6 (Tenn. Crim. App. Aug. 18, 1997) ("[T]he content of newspaper articles is hearsay that does not fall within an exception to the hearsay rule, and thus is inadmissible at trial." (citing Tenn. R. Evid. 801 to 803)); *see also United States v. El-Mezain*, 664 F.3d 467, 496 (5th Cir. 2011), (stating that newspapers, leaflets, the internet, and friends are sources that "constitute classic hearsay rather than personal knowledge"), *modified*, (Dec. 27, 2011); *United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) ("The web postings were not statements made by declarants testifying at trial, and they were being offered to prove the truth of the matter asserted. That means they were hearsay." (citing Fed. R. Evid. 801)).

As for Plaintiff's statement to Ms. Hill in 2015 and his request on the comment card, neither identified Mr. Dabney. Moreover, Plaintiff refused to help identify the assailant at that time or provide additional information that would have assisted the YMCA in an investigation.

The foregoing reveals that Plaintiff failed to present or identify any competent evidence to support a finding the YMCA knew or should have known that it was reasonably foreseeable that Mr. Dabney would sexually assault someone. Based on these facts, we find that Plaintiff failed to carry his burden to "'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Rye*, 477 S.W.3d at 265 (quoting Tenn. R. Civ. P. 56.06). Therefore, we affirm the summary dismissal of Plaintiff's claims, *albeit* on different grounds than the trial court.[7]

### III.    THE EXCULPATORY CLAUSE

Because Plaintiff failed to create a dispute of a material fact concerning his negligence claims and all such claims were dismissed, the issue of whether the exculpatory clause is enforceable is now moot.

---

[7] The fact we affirmed the summary dismissal of Plaintiff's claims on different grounds does not require a reversal of the trial court's decision because this court may affirm a grant of summary judgment on grounds different from those cited by the trial court. *See Bobo v. City of Jackson*, 511 S.W.3d 14, 26 n.14 (Tenn. Ct. App. 2015) ("[W]e are entitled . . . to affirm the entry of summary judgment on grounds that differ from those forming the basis of the trial court's decision."); *see also Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 302 n.31 (Tenn. Ct. App. 2007) ("The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result." (citations omitted)).

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with instructions to dismiss the Complaint. Costs of appeal are assessed against Appellant, Adam Boswell.

_____
FRANK G. CLEMENT JR., P.J., M.S.